RECEIVED
IN LAFAYETTE, LA.

AUG 22 2011

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| BILLY W. SMETANA, ET AL | CIVIL ACTION 10-349 |
| VERSUS | JUDGE HAIK |
| APACHE CORPORATION, ET AL | MAGISTRATE JUDGE HANNA |

## RULING

Before the Court are the following motions:

# 72–Motion for Summary Judgment by Liberty against Apache re: Apache's cross claims involving Montco

# 80–Motion for Summary Judgment by Wise Well against Apache

# 116–Motion for Summary Judgment by Liberty against Stokes & Spiehler

# 117–Motion for Summary Judgment by Liberty against McGilvray

# 126–Motion for Summary Judgment by McGilvray and Stokes & Spiehler against Liberty

# 127–Motion for Summary Judgment by Apache against McGilvray and Stokes & Spiehler

# 128–Motion for Summary Judgment by McGilvray and Stokes & Spiehler against Wise Well

# 136–Motion for Summary Judgment by Liberty against Apache on Cross Claim of Apache regarding Stokes & Speihler claim for coverage

# 137–Motion for Summary Judgment by Liberty against Apache on Cross Claim of Apache regarding McGilvray's claim for coverage

The issues set forth in the foregoing motions deal strictly with the contractual obligations of the parties and center around a limited number of contracts.

Except for Documents #72 and #80, which the Court had taken under advisement following a March 17, 2011 hearing, all of the motions were set for hearing and oral argument was heard on August 18, 2011.

On March 9, 2008, Billy Smetana, a wireline worker and employee of Wise Well, was allegedly injured while descending a gangway from the L/B KAYD, a Montco vessel, to an Apache fixed platform located on the Outer Continental Shelf off the Coast of Texas. The liftboat was spudded down on the OCS at the time of the accident. At the time of the accident, the L/B KAYD was chartered by Apache from Montco pursuant to a Master Timer Charter. Apache was also a party to a Master Service Contract with Wise Well, which was followed by a work order for wireline services. Apache had a separate Master Service Contract with Stokes & Spiehler for "company man" work. Stokes & Spiehler, in turn, contracted with Timothy McGilvray for consulting services on the job.

Mr. Smetana filed suit in the main demand against Apache Corporation (Apache), Wise Well Intervention Services, Inc. (Wise Well), Liberty Mutual, Montco Offshore, Inc. (Montco), Stokes & Spiehler (Stokes), and Timothy McGilvray, among others. The defendants filed various claims against each other which are at issue in the pending motions.

This Court has already determined that maritime law does not apply to the main contract at issue, the Apache/Wise Well contract, that the Longshore and Harbor Workers' Compensation Act, section 905(b) invalidates the indemnity provisions therein, and that the Texas Oilfield Anti-Indemnity Act invalidates the indemnity obligations.

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment may be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Fed.R.Civ.P. 56(c), Celotex Corp v. Catrett,* 477 U.S. 317 (1986). Before granting a summary judgment motion, a Court must be satisfied that no reasonable trier of fact could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986), *Boeing Co. v. Shipman,* 411 F.2d. 365 (5th Cir., 1969). All evidence and inferences drawn therefrom must be considered in the light most favorable to the non-moving party when determining whether a material issue of fact exists. In this case, there exists no genuine issues of material fact and the contractual matters are ripe for a summary judgment determination.

**#72–Motion for Summary Judgment on Behalf of Liberty as to the claims of Apache for the contractual assumption of Montco's defense (Apache's D&I cross claim) AND #80–Motion for Summary Judgment by Wise Well as to the Apache claims for Defense and Indemnity**

For the same reasons the Court dismissed Montco's claim for defense and indemnity against Liberty earlier in these proceedings, this Motion for Summary Judgment by Liberty is also **GRANTED**. As the Motion for Summary Judgment filed by Wise Well is essentially identical and adopts the arguments of Liberty Mutual as to this claim, it is also **GRANTED**.

Essentially, these motions pertain to Apache's attempt to enforce the defense and indemnity provisions in the Apache/Wise Well contract to cover the obligation it owes to Montco, the vessel owner. The Court has already determined that Wise Well and Liberty do not owe an obligation to assume the liability of Montco and granted summary judgment as to that

issue at the hearing held on December 16, 2010. To allow that same obligation to be passed to Wise Well through Apache, when it has already been determined that it is not owed directly, would be unjust and contrary to the intent of section 905(b). Further, the Court finds the Texas Oilfield Anti Indemnity Act invalidates the defense and indemnity provision at issue as the Apache/Wise Well contract does not contain mutual obligations to provide insurance coverage to support the obligations undertaken. The mutuality of the insurance obligation is discussed below.

As many of the arguments and issues overlap in these motions, the Court will discuss various arguments and findings throughout this Ruling and apply them to the parties' motions accordingly.

### #116–Motion for Summary Judgment by Liberty Mutual Insurance Co. v. Stokes & Spiehler

This motion pertains to the Cross Claim of Stokes & Spiehler against Wise Well and Liberty Mutual seeking defense and indemnity for the claims of the plaintiff in the main demand against Stokes, as well as for additional assured coverage under the Liberty Mutual Commercial General Liability policy that was issued to Wise Well. The contracts at issue in this Motion are the Apache/Wise Well contract and the Apache/Stokes contract.

As previously determined by the Court, maritime law does not apply to the Apache/Wise Well contract, but Texas law does apply through the Outer Continental Shelf Lands Act. As such, the Texas Oilfield Anti Indemnity Act (TOAIA) also applies. Rather than fully reiterating the reasons for its prior findings, which are in the record, the Court will instead focus on applying those decisions to the similarly situated issues in the current motions. As to the Apache/Stokes

contract, the parties agree that the proper state law to apply is that of the State of Texas. The difference of opinion comes in the application.

The Apache/Wise Well contract and the Apache/Stokes contract are incredibly similar with respect to the defense and indemnity language, including the failure to contractually obligate Apache to obtain insurance coverage for the obligations it undertook in the agreements. Both Wise Well and Stokes are obligated to provide specified insurance coverage to support their liability obligations, but Apache is not. When faced with this same issue in previous motions, the Court found the defense and indemnity provisions to be invalid under the TOAIA. The Court believes this determination is supported by the Fifth Circuit's decision in *Greene's Pressure Testing and Rentals v. Flournoy Drilling*, 113 F.3d. 47 (5th Cir., 1997), and a plain reading of the TOAIA. Although Stokes and others have argued that the Texas Supreme Court's ruling in *Ken Petroleum Corp. v. Questor Drilling Corp*, 24 S.W. 3d 344 (TX, 2000) modified the ruling in *Greene,* no one has shown, and the Court does not read it to mean, that contracts obligating only one party to secure insurance covering defense and indemnity are valid. Instead, the *Ken* case found that mutual agreements don't have to necessarily be equal in dollar amount and will be enforced up to the lower amount. In that sense it modified the Greene ruling which required them to contain equal insurance coverage.

With respect to the insurance issue, Stokes (and others in the same position) also argued that Apache actually did carry insurance covering the indemnity obligation, even though it was not contractually obligated to do so, so this should validate the defense and indemnity provisions with respect to the TOAIA. A second argument asserted is that the TOAIA does not necessarily invalidate one-sided obligations as it specifically mentions unilateral indemnity obligations and places on them a $500,000 limit. The Court finds these arguments carry no weight.

Section 127.005 of the TOAIA states:

(a) This chapter does not apply to an agreement that provides for indemnity if the parties agree in writing that the indemnity obligation will be supported by liability insurance coverage to be furnished by the indemnitor subject to the limitations specified in (b) or ( c).

(b) With respect to a mutual indemnity obligation, the indemnity obligation is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor has agreed to obtain for the benefit of the other party as indemnitee.

( c) With respect to a unilateral indemnity obligation, the amount of insurance required may not exceed $500,000.

In this case, we do not have an agreement "in writing that the indemnity obligation will be supported by liability coverage to be furnished by the indemnitor". What we have in both the Apache/Wise Well contract and the Apache/Stokes contract is a mutual indemnity obligation that requires only **one** of indemnitors to support its obligation with insurance coverage. The obligation to support the indemnity obligation with insurance coverage is in writing only as to Wise Well in the first contract and Stokes in the second, but not to Apache as indemnitor in either. As such, the statutory requirements are not met.

Further, we are not faced with a unilateral indemnity obligation in either contract, so 127.005( c) is inapplicable[1]. "Unilateral Indemnity Obligation" is defined in the statute as:

---

[1] Even if the contract contained a unilateral indemnity obligation, the statute clearly states that it would only allow the provision to stand if the insurance obligation was $500,000 or under. Here, the insurance obligations are for $1M.

> "Unilateral Indemnity Obligation" means an indemnity obligation in an agreement pertaining to a well for oil, gas, or water or to a mine for a mineral in which one of the parties as indemnitor agrees to indemnify the other party as indemnitee with respect to claims for personal injury or death to the indemnitor's employees or agents or to the employees or agents of the indemnitor's contractors but in which the indemnitee does not make a reciprocal indemnity to the indemnitory.

"Mutual Indemnity Obligation" is also defined in section 127.001 as:

> "Mutual Indemnity Obligation" means an indemnity obligation in an agreement pertaining to a well for oil, gas, or water or to a mine for a mineral in which the parties agree to indemnify each other and each other's contractors and employees against loss, liability, or damages arising in connection with bodily injury, death, and damage to property of the respective employees, contractors or their employees, and invitees of each party arising out of or resulting from the performance of the agreement.

Both contracts at issue contain mutual indemnity obligations. Those obligations are not supported with written insurance obligations by both indemnitors to each contract, as required under Texas law. Having insurance, but lacking a written obligation to have it, does not satisfy the statutory requirements. This is for obvious reasons. The statute intends for those parties who freely contract for defense and indemnity in situations that are not contrary to public policy to support those obligations with insurance. In order for such agreements to be valid, they must weigh equally with respect to the obligations undertaken on both sides, so that there is no inequity in these situations. As noted in the *Ken* decision, as well as the statutory language, the contracts do not have to read identical dollar amounts of insurance coverage, but they must both

contain an obligation to carry such coverage. This is where the equality lies. Here, we do not have that written contractual obligation on the part of Apache. As such, the defense and indemnity provisions in both the Apache/Wise Well contract and the Apache/Stokes contract are invalid under the TOAIA.

Stokes set forth a separate argument with respect to the contracts and obligations undertaken therein. Stokes concedes that neither the Apache/Wise Well contract, nor the Apache/Stokes contract contain an insurance obligation on the part of Apache, so they do not contain mutual obligations in writing when read individually. However, if you read them together, they satisfy the requirements for a valid defense and indemnity provision. That is, Wise Well owes defense and indemnity and insurance coverage for any liability to Apache and Apaches's contractors( including Stokes) through the Apache/Wise Well contract and Stokes owes the same to Apache and Apache's contractors (including Wise Well) in the Apache/Stokes contract. When read together, mutual obligations, covered contractually by insurance, exist between Stokes and Wise Well.

Although the Court admires the creativity of the argument, Stokes failed to cite any support whatsoever for reading the contracts together in that fashion to find a valid defense and indemnity obligation. Additionally, a plain reading of the statutory language contained in the TOAIA does not support the combination of separate invalid agreements to manufacture a valid agreement between two parties who have not contracted with each other. The Court has already determined that both contracts contain invalid defense and indemnity provisions. They can not be read together to make one valid provision. Two wrongs do not make a right.

With respect to the additional assured argument, it has been conceded by Stokes, but the Court will note for the record that neither Stokes, nor McGilvray are additional assureds under the Liberty Policy. The language of the contract in no way contemplates the inclusion of contractors of Apache, who are not parties to any contract with Wise Well, to be included as additional assureds.

The issue of whether or not the Liberty Policy provides coverage to Wise Well for contractual obligations to defend and indemnify Stokes and McGilvray is **MOOT**, as no valid indemnity obligation exists.

The findings of the Court and reasoning for same apply also to the claim by Timothy McGilvray for defense, indemnity, and coverage. The Court notes that the findings in favor of Liberty are even stronger with respect to Mr. McGilvray as he is the contractor of a contractor, one step further removed from coverage. The Court will not fully analyze the lack of indemnity and coverage for Mr. McGilvray personally as the issue has been determined through the foregoing discussion. If there is no coverage for Stokes & Spiehler, there is no coverage for Mr. McGilvray, its contractor.

For the reasons set forth above, the Motion for Summary Judgment by Liberty Mutual Insurance Company against Stokes & Spiehler (Doc. #116) and the virtually identical motion filed by Liberty Mutual against Timothy McGilvray (Doc. #117) are **GRANTED**. Conversely, the Motion for Summary Judgment by Stokes & Spiehler against Liberty Mutual (Doc. #126) and the Motion for Summary Judgment by Timothy McGilvray against Liberty Mutual (Doc. #128) are **DENIED**.

### Document #127–Motion for Summary Judgment by Stokes & Spiehler and Timothy McGilvray v. Apache Corporation

Stokes and Mr. McGilvray both seek the enforcement of the defense and indemnity provision in the Apache/Stokes Master Service Contract. According to Stokes, the contract contains mutual defense and indemnity provisions and should be declared valid and enforceable by the Court. Stokes and Mr. McGilvray have both filed cross-claims against Apache seeking defense and indemnity for the claims of the plaintiffs.

According to Stokes and Mr. McGilvray, the Apache/Stokes contract obligates Apache to defend Stokes and its employees against personal injury claims brought against it by members of the Apache "Company Group". The Apache Company Group includes Wise Well and it's employee, Mr. Smetana. If the contractual indemnity obligation is valid, defense and indemnity would be owed to Stokes by Apache. It would not, however, be owed to Mr. McGilvray because he is a contractor of Stokes & Spiehler, not an employee. As such, he is not provided defense and indemnity under any contract. In any event, no indemnity obligation is due as the contractual obligation at issue is void under the TOAIA.

Although the Court has decided the identical issues with respect to other parties through separate motions, it will give a brief explanation of its findings since we are now looking to the Apache/Stokes contract, rather than the Apache/Wise Well contract at issue previously.

For the same reasons the main contract at issue in this case–the Apache/Wise Well Master Service Agreement–is not a maritime contract, neither is the Apache/Stokes contract. Contracts for wireline services for an oil and gas well, such as the Apache/Wise Well agreement and accompanying work order, have consistently been held to be non-maritime in nature. *See Thurmond v. Delta Well Surveyors, 856 F.2d. 952 (5th Cir., 1988), Domingue v. Ocean Drilling*

*and Exploration Co,* 923 F.2d. 393 (5th Cir., 1999), *and others.* Additionally, the Fifth Circuit has advised that Courts should look to the focus of the contract when determining if an agreement is maritime in nature. *Grand Isle Shipyard v. Seacor Marine*, 589 F.3d. 778 (5th Cir., 2009). The Apache/Stokes contract calls for "contract supervision" by Stokes. A contract to provide company man services for an oil and gas well located on a fixed platform on the Outer Continental Shelf and overseeing these same wireline operations is also non-maritime in nature. This Court has determined that OCSLA applies to this case and now extends that ruling to the Apache/Stokes contract.

As Maritime Law is inapplicable, the contract then calls for the application of the law of the state in which the work is performed. In this case, that is the law of Texas. The law of Texas is applicable law under both the contract choice of law provision and the OCSLA. In the *Union Texas Petroleum Corp. v. PLT Engineering, Inc,* 895 F.2d. 1043 (5th Cir., 199) case, the appellate court held that choice of law provisions are superceded by the OCSLA in contracts pertaining to OCSLA structures. The law of the adjacent state applies if:

    (1) The controversy arises on a situs covered by OCSLA;

    (2) Federal maritime law does not apply of its own force; and

    (3) the state law is not inconsistent with Federal law.

All three factors have been met in this case, as determined in earlier motions. The laws of the State of Texas apply to this case as the work being performed was taking place of the coast of that state. As such, the TOAIA applies to the contract at issue. Stokes and Mr. McGilvray set out virtually the same arguments with respect to obligations being sought from Apache as they did in the earlier motions against Liberty. That is, Stokes argues that both Apache and Stokes satisfied the insurance obligation. As stated by Stokes in its memorandum in support of this

motion, "Stokes & Spiehler satisfied its insurance obligation when it "agreed to obtain" the insurance coverages set forth in Exhibit B to the Apache-Stokes & Spiehler Master Service Contract. Apache satisfied its insurance obligation through the acquisition of approximately $300,000,00 of liability insurance coverage with a $5 million self insured retention." For the same reasons set forth above, the indemnity provision in the Apache/Stokes contract is invalid as the parties did not have, in writing, mutual obligations to provide insurance covering the indemntiy provisions. That is, each indemnitor to the mutual indemnity obligations did not "agree in writing that the indemnity obligation will be supported by liability insurance coverage to be furnished by the indemnitor" as plainly required by the Act.

The requirement to support these obligations with an agreement to obtain insurance in writing is spelled out clearly in the Act. As mentioned earlier, there is good reason for such language. It is to ensure that parties who agree to indemnify each other obtain the necessary insurance to support that obligation should it arise. To contractually obligate one party to do so, while not contractually obligating the other party to do so, results in an inequity and imbalance in the obligations. This is specifically what the Act seeks to avoid. The fact that insurance existed that may or may not cover the indemnity obligations, without any teeth to enforce such coverage, simply does not satisfy the requirement. Further, the Court finds it unlikely that any insurer or indemnitor would willingly step up to the plate to cover a claim without a contractual obligation to do so. The TOAIA requires indemnitors to agree "in writing" that the indemnity obligations will be supported by liability insurance. That has not taken place in the Apache/Stokes contract, resulting in the indemnity provisions being invalid.

For the aforementioned reasons, the Motion for Summary Judgment by Stokes & Spichler and Timothy McGilvray against Apache is **DENIED**. Document #136 and Document #137 are Motions for Summary Judgment by Liberty against Apache on the Cross Claims of Apache regarding the Stokes and McGilvray claims for coverage. These motions are intertwined with Document #127, the claim by Stokes and McGilvray against Apache for the coverage. For the reasons stated herein, Doc. #136 and #137 by Liberty are **GRANTED**. As the Court has determined there is no coverage due to Stokes or McGilvray by Apache, Apache has no claim for such coverage against Liberty Mutual.

THUS DONE and SIGNED on this 19th day of August, 2011.

RICHARD T. HAIK, SR., DISTRICT JUDGE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA