RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE __11/21/11__

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| BILLY W. SMETANA, ET AL. | CIVIL ACTION NO.: 10-349 |
| VERSUS | JUDGE HAIK |
| APACHE CORPORATION, ET AL | MAGISTRATE JUDGE HANNA |

## REASONS FOR JUDGMENT

### I. Facts

On March 1, 2010, Plaintiffs Billy and Brandy Smetana brought suit against several entities for injuries arising out of an accident aboard the L/B KAYD, where Billy Smetana, an employee of Wise Well, was performing wireline services on a Well in the Gulf of Mexico off Texas' coast. Plaintiffs allege that on March 9, 2008, while inspecting the work site, Mr. Smetana sustained an injury to his lower left extremity when he fell while egressing the vessel onto a fixed platform via a gangway laid across the deck of the vessel to the platform. Plaintiffs allege that Mr. Smetana's injury was caused by a combination of improper positioning and rigging of the gangway from the vessel to the platform and construction debris positioned on the platform at the gangway landing. The defendants at issue for this judgment include Apache Corporation (Apache), the time charterer, dock owner and platform owner; Montco Offshore, Inc. (Montco), the vessel owner; Stokes & Spiehler Offshore, Inc. (S&S), the company to provide "company man services"; Tim McGilvray (McGilvray), the "company man" hired by S&S; and LIS Energy Services, Inc. (LIS), the company to provide an offshore crew.

The overall objective of the project was to plug and abandon Apache's Well on the platform. In order to actually perform this project, Apache contracted with several companies, including Wise Well to perform the wireline services on the Well, Montco to provide a lift boat with a captain, and LIS to provide the offshore crew to actually perform the plug and abandon services. At the time of Mr. Smetana's injury, Montco was providing crane services and room and board to Apache's independent contractors.

It is alleged that prior to Mr. Smetana's accident, McGilvray directed the vessel's captain, Captain Charpentier, to travel from Apache's facility to the platform with the Well at issue. As the vessel approached the platform, McGilvray instructed the Captain where he was to moor the vessel relative to the platform, and the Captain agreed. Once the Captain positioned the vessel next to the platform, the Captain, McGilvray and the LIS crew supervisor, Leonard Marcel, determined and agreed upon where and how the gangway would be positioned in order to ingress and egress the vessel. While the Captain dictated the procedures from the wheelhouse, the Montco crane operator and members of the LIS crew put the gangway in place at the predetermined points. Ultimately, the gangway was placed on top of the toeplate of the outer

1

perimeter handrail of the platform and the platform end of the gangway was above construction debris that was on the platform deck. On the date of injury, Mr. Smetana was egressing the vessel via the gangway to begin his work on the Well. Prior to egressing, Mr. Smetana looked down and became aware of the construction debris. Nevertheless, Mr. Smetana continued and, unfortunately, as he was holding onto the handrail and stepping down from the gangway onto the debris, the debris shifted and caused him to fall and injure his left foot.

Based on these facts, Plaintiffs brought suit for negligence based on general maritime laws of the United States, 33 U.S.C. § 905(b) of the Longshore and Harbor Workers' Compensation Act (LHWCA), and Texas law as adopted by virtue of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, et seq. Particular to this motion, Plaintiffs brought claims against Montco under general maritime law pursuant to Section 905(b) as owner and operator of the vessel. Defendant Montco now brings this Motion for Summary Judgment, alleging that Defendant carries no liability since it did not cause or contribute to Mr. Smetana's injury, and thus, did not violate any duty it may have owed to him.

## II. Defendant's Contentions

Defendant argues that it is entitled to summary judgment because Defendant did not breach any duty owed to Mr. Smetana. Defendant asserts two distinct legal standards: *Scindia* and *Kermarec*.[1] Under each standard, however, Defendant contends that it met its duties, as there is no evidence that any Montco employee knew of the condition of the platform or contributed in any way to the condition of the deck, the alleged accident, or the alleged injury. Additionally, Defendant asserts a defense that the condition of the deck was open and obvious to Mr. Smetana.

First, Defendant argues that it met all three duties owed to Mr. Smetana under the *Scindia* standard of care. Particularly, (1) Defendant did not breach the *turnover duty* because there simply was no turnover here from the L/B KAYD to any third party; (2) Defendant did not breach the *active control duty* because the platform, where Mr. Smetana was injured, was not under the active control of Montco and there is no evidence that Montco was in active control of Mr. Smetana's duties; and (3) Defendant did not breach the *duty to intervene* because there is no evidence suggesting that anyone employed by Montco had actual knowledge of any allegedly dangerous condition on the deck of the platform, and because Mr. Smetana knowingly stepped on debris, and therefore, there was no duty by Montco to intervene and save him from his own judgment.

Second, Defendant contends that it also met its standard of care under *Kermarec*, which requires a vessel owner practice reasonable care under the circumstances to its passengers. Specifically, Defendant argues there is no evidence suggesting that there was anything wrong with the vessel or that Defendant provided Mr. Smetana with an unsafe vessel to sleep and eat. Defendant emphasizes that no Montco employee had notice of any problem with the condition of

---

[1] Defendant argues under two standards because, as it points out, there is some ambiguity as to which standard of care is owed by vessel owners when the person injured is considered a longshoreman strictly by virtue of the Outer Continental Shelf Lands Act.

2

the deck. Moreover, Defendant emphasizes that the condition of the deck was open and obvious to Mr. Smetana, who knowingly chose to proceed with his egress without any objection or demand. Defendant argues that, ultimately, it was Mr. Smetana's choice to proceed on the gangway that caused his accident, not due to any violation by Montco.

### III. Plaintiffs' Opposition

Plaintiffs contend that Defendant is liable for Mr. Smetana's injuries because it breached its duty owed to Mr. Smetana, specifically the duty to provide safe means of ingress and egress. Plaintiffs' case against Defendant rests on the actions of Defendant's Captain and crane operator. Particularly, Plaintiffs point to several statements made by Captain Charpentier in his deposition. Plaintiffs argue that, most significantly, Captain Charpentier admitted that the placement of the gangway on the platform was decided by him, McGilvray and the LIS foreman and that he was responsible for a "clear path to and from his vessel." In fact, as Plaintiffs argue, Captain Charpentier was in the wheelhouse dictating the procedure to the crane operator while the gangway was being rigged up. Further, Plaintiffs point out that Captain Charpentier admitted that the placement of the gangway, over debris, was unsafe, and that it was Defendant's crane operator who actually placed the gangway. Based on this information, Plaintiffs argue that regardless of the standard of care applicable in this case, Defendant clearly breach its duty owed to Mr. Smetana by not exercising reasonable care in the placement of the gangway.

Plaintiffs argue that the case of *Cooper v. Chevron, USA*[2] is dispositive in this case. There, the plaintiff was a service hand employed by Halliburton, who had been contracted by Chevron to provide wireline services on its fixed platform. Bluestreak Offshore owned the vessel and gangway and positioned the gangway between the vessel and the platform, placing it underneath the platform handrails, similar to the instant case. The dispute in *Cooper* was the identity of the person responsible for positioning the gangway. The court denied summary judgment and held that there were disputed material facts over the positioning and use of the gangway. Plaintiffs contend that, in this case, the Captain admitted he played a role in placing the gangway, and thus, there remain genuine disputes of material fact regarding the negligence of Defendant in providing Mr. Smetana with safe ingress and egress to the vessel.[3]

*Cooper* aside, Plaintiffs argue that Defendant has breached its duty under *Kermarec*. Specifically, as noted above, the Captain testified that he was responsible for a clear path to and from his vessel and that he played a role in the positioning of the gangway. Accordingly, there remain genuine disputes of material fact as to whether Defendant acted reasonably under the circumstances in positioning the gangway from the vessel to the platform.

Plaintiffs argue that Defendant's motion likewise fails under the *Scindia* standard of care. Foremost, Plaintiffs argue that Defendant maintained active control of the gangway at all times, as its Captain and crane operator were involved in its placement. Plaintiffs contend there is no

---

[2] 1990 WL 81453 (E.D. La. 1990)
[3] Although persuasive, Defendant correctly points to the dissimilarities between *Cooper* and the instant case: there, the court did not identify the standard of care being applied, which this Court deems necessary in this case.

evidence that this control was ever relinquished to the Wise Well crew or Mr. Smetana, and as a result, Defendant breached its active control duty. Plaintiffs also contend that Defendant breached its duty to intervene when the crane operator placed the gangway over the debris yet did nothing to correct the dangerous condition. Lastly, Plaintiffs argue that Defendant breached its turnover duty when it failed to inform Mr. Smetana of the dangers of the gangway. Plaintiffs highly dispute Defendant's contention that it was unaware of the dangerous condition of the gangway. As Plaintiffs point out, while the Captain testified that he did not see the dangerous condition from the wheelhouse, Defendant nevertheless contends that the dangerous condition was "open and obvious." Accordingly, Plaintiffs argue that significant issues of material fact remain regarding whether Defendant had actual knowledge of the dangerous condition.

Based on these facts, Plaintiffs argue that summary judgment should not be entered, as genuine issues of fact still remain.

**IV. Analysis**

    A. **Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the moving party has the burden of demonstrating that it is entitled to summary judgment and the court must view all of the evidence in the light most favorable to the non-moving party. *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002); *see, Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

    B. **Genuine Issues Of Material Fact Remain Regarding Defendant's Breach Under The *Kermarec* Standard Of Care**

        *a. Applicability of Kermarec*

"It is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel *who are not members of the crew.*" *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959) (citations omitted, emphasis added). This is known as the *Kermarec* standard of care. More specifically, vessel owners must provide *passengers* with a reasonably safe means of boarding or leaving a vessel, including proper gangways and landing places. *Tittle v. Aldcosta*, 544 F.2d 752, 755 (5th Cir. 1977); *Arthur v. Flota Mercante Gran Centro Americana, S.A.*, 487 F.2d 561, 562 (5th Cir. 1974); *Counts v. Lafayette Crew Boats, Inc.*, 622 F.Supp. 299, 301 (W.D. La. 1983).

Two standards of care have been argued in this case. This Court finds that Mr. Smetana was a passenger aboard the L/B KAYD, not a member of the crew or longshoreman. Specifically, Mr. Smetana, as a Wise Well employee, was hired to perform the wireline services for Apache's Well. Significantly, this Well was located on a fixed platform. In other words, Mr. Smetana was not performing any work on the vessel to be considered a longshoreman for the

4

purposes of the applicable standard of care. Because Mr. Smetana was merely a passenger on the L/B KAYD as a means to get to the platform, the *Kermarec* standard is applicable.

### b. Breach of Duty Under *Kermarec*

Applying the *Kermarec* standard, the issue here is whether Defendant breached its duty of reasonable care to provide Mr. Smetana with a safe means of ingress and egress of the vessel. Based on the *undisputed* facts, it is clear that Defendant played a role in the placement of the gangway. This was established through Captain Charpentier's testimony. What is left unknown, however, is whether Captain Charpentier's suggestions and/or actions, and the actions of Defendant's crane operator, in the placement of the gangway was a breach of its duty to exercise reasonable care. Material issues of fact also remain regarding the amount of Defendant's involvement in the placement of the gangway, which ultimately affects the amount of Defendant's potential liability. These questions must be answered before a final judgment can be entered in this case.

### C.   Genuine Issues Of Material Fact Remain Regarding Defendant's Open And Obvious Defense

In its Motion, Defendant asserts an "open and obvious" defense, essentially arguing that it is not liable for Mr. Smetana's injury because Mr. Smetana knowingly stepped on the debris that ultimately injured him. Although Mr. Smetana does testify that he saw the condition of the gangway and deck, Defendant's Captain testified that he did not see the condition of the gangway and deck. As a result, whether, in fact, the condition was open and obvious is debated. Furthermore, Defendant's defense may affect Plantiffs' potential comparative negligence, which is unknown at this time. Accordingly, material issues of fact remain regarding Defendant's defense.

## V. Conclusion

The Court has reviewed the record and considered Defendant's motion for summary judgment, viewing the evidence in the light most favorable to Plaintiffs. The record reveals that there remaining genuine issues of material fact, especially given the evidence that Defendant was involved in the placement of the gangway that ultimately led to Mr. Smetana's alleged injury.

For the reasons set forth above, Defendant's Motion for Summary Judgment [Doc. 115] is hereby **DENIED**.

THUS DONE AND SIGNED at Lafayette, Louisiana on this ___21st___ day of November, 2011.

HONORABLE RICHARD T. HAIK, SR.
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

5