RECEIVED
USDC WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 11/21/11
BY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| BILLY W. SMETANA, ET AL. | CIVIL ACTION NO.: 10-349 |
| VERSUS | JUDGE HAIK |
| APACHE CORPORATION, ET AL | MAGISTRATE JUDGE HANNA |

## REASONS FOR JUDGMENT

### I. Facts

On March 1, 2010, Plaintiffs Billy and Brandy Smetana brought suit against several entities for injuries arising out of an accident aboard the L/B KAYD, where Billy Smetana, an employee of Wise Well, was performing wireline services on a Well in the Gulf of Mexico off Texas' coast. Plaintiffs allege that on March 9, 2008, while inspecting the work site, Mr. Smetana sustained an injury to his lower left extremity when he fell while egressing the vessel onto a fixed platform via a gangway laid across the deck of the vessel to the platform. Plaintiffs allege that Mr. Smetana's injury was caused by a combination of improper positioning and rigging of the gangway from the vessel to the platform and construction debris positioned on the platform at the gangway landing. The defendants at issue for this judgment include Apache Corporation (Defendant), the time charterer, dock owner and platform owner; Montco Offshore, Inc. (Montco), the vessel owner; Stokes & Spiehler Offshore, Inc. (S&S), the company to provide "company man services"; and Tim McGilvray (McGilvray), the "company man" hired by S&S.

The overall objective of the project was to plug and abandon Apache's Well on the platform. In order to actually perform this project, Apache contracted with several companies, including Wise Well to perform the wireline services on the Well. Apache also contracted with S&S to provide a company man to supervise and coordinate the work. The Master Service Contract between Apache and S&S states in pertinent part,

> **INDEPENDENT CONTRACTOR**: Contractor shall be and perform at all times as an independent contractor and neither company nor any contractor personnel shall be deemed to be subject to the control or discretion of company as to the details of the work, company being interested only in the compliance of the work with the job order. Company shall be entitled to make such inspections as may be necessary in furtherance of its interest and to determine that the work is being performed in accordance with the job order.

Pursuant to this contract, S&S hired McGilvray to act as the company man at the job site. It is alleged that while at the job site, McGilvray worked with the vessel's captain, Captain

1

Charpentier, to determine the vessel's positioning next to the platform, specifically where the Captain was to moor the vessel relative to the platform. Furthermore, it is alleged that McGilvray, together with the Captain and another crew supervisor, determined where the gangway points of rest were to be on each of its ends. Ultimately, the gangway was placed on top of the toeplate of the outer perimeter handrail of the platform and the platform end of the gangway was above construction debris that was on the platform deck. On the date of injury, Mr. Smetana was egressing the vessel via the gangway to begin his work on the Well. Unfortunately, as he was holding onto the handrail and stepping down from the gangway onto the debris, the debris shifted and caused him to fall and injure his left foot.

Based on these facts, Plaintiffs brought suit for negligence based on general maritime laws of the United States, 33 U.S.C. §905(b) of the Longshore and Harbor Workers' Compensation Act (LHWCA), and Texas law as adopted by virtue of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, et seq. Defendant Apache now brings this Motion for Summary Judgment, alleging that Defendant carries no liability since it exercised no control over the positioning of the vessel or gangway that ultimately led to Mr. Smetana's alleged injury.

## II. Defendant's Contentions

Defendant argues that it is entitled to summary judgment because Plaintiffs cannot prove that Defendant exercised any control over the positioning of the vessel or gangway. Foremost, Defendant argues that Texas' Chapter 95 applies to Plaintiffs' case. Specifically, this statute states that a property owner is not liable for the injuries to an independent contractor unless the property owner exercised or retained some control over the work and the property owner had actual knowledge of the danger and failed to adequately warn. Defendant argues that, although the plain language of the statute requires the injury to the independent contractor arise out of the improvement of the property, the statute has been broadly construed by Texas courts to apply to cases just like the instant one. Particularly, Texas courts have applied Chapter 95 even when the defective condition or activity leading to the injury was not the direct object of the independent contractor's work. Thus, even though Mr. Smetana was not injured while working on the well, but rather egressing the vessel, Chapter 95 nonetheless applies.

Defendant contends that Chapter 95, as applied here, precludes Defendant's liability since Plaintiffs cannot show that Defendant controlled the operative work methods of its contractors in positioning the vessel. To support its argument, Defendant relies on the explicit terms of the contract between Defendant and S&S, which establishes S&S as an independent contractor where Defendant was only interested "in the compliance of the work with the job order," and not with the details of the job itself. Furthermore, Defendant emphasizes the fact that it had no contract with McGilvray, who had input in the positioning of the vessel. Likewise, Defendant maintained no employment contract with McGilvray. As a result, Defendant argues it cannot be held liable under Chapter 95 since it maintained no control over the positioning of the vessel. For these same reasons, Defendant asserts that it also carries no liability as the time charterer or the dockowner. Accordingly, Defendant prays that judgment be entered in its favor.

### III. Plaintiffs' Opposition

Plaintiffs contend that Defendant is liable for Mr. Smetana's injuries as the time charterer, dockowner, and platform owner. The crux of Plaintiffs' claims surrounds the relationship between Defendant and McGilvray. Specifically, Plaintiff emphasizes that McGilvray was Defendant's "eyes, ears and hands" on the job site as admitted by McGilvray in deposition. Accordingly, Plaintiff argues that McGilvray was Defendant's representative, and thus, Defendant is vicariously liable for the acts of McGilvray in determining the position of the gangway and vessel.

Plaintiffs argue that Defendant is liable as time charterer. Plaintiffs contend that time charterers such as Defendant can be liable when the time charterer controlled the means of ingress and egress. Here, Plaintiffs argue that Defendant directed and controlled the vessel ingress and egress through McGilvray, and is thus liable. Similarly, Plaintiffs contend that Defendant controlled the gangway and is thus liable as the dockowner.

With regard to Chapter 95, Plaintiffs dispute its applicability here. Specifically, Plaintiffs rely on a Texas appellate case that held Chapter 95 did not apply there because the injury did not arise from the condition of the improvement, but rather the condition of a separate property.[1] Just like that case, Plaintiffs argue that Chapter 95 does not apply here because Mr. Smetana was injured while egressing the vessel, not while working on the Well. As a result, Plaintiffs argue that the law that does apply to this case is found in the Texas Supreme Court case, *Redinger v. Living, Inc.*, 689 S.W.3d 415 (Tex. 1985). According to that case, a property owner is liable to an independent contractor if the owner retained control of any part of the work and failed to exercise reasonable care. Plaintiffs urge, like above, that Defendant retained control of the work through McGilvray, and is thus liable under *Redinger*. Based on these facts, Plaintiffs argue that summary judgment should not be entered, as genuine issues of fact still remain.

### IV. Analysis

#### A. <u>Summary Judgment Standard</u>

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the moving party has the burden of demonstrating that it is entitled to summary judgment and the court must view all of the evidence in the light most favorable to the non-moving party. *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002); *see, Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

---

[1] *Hernandez v. Brinker International, Inc.*, 285 S.W.3d 153 (Tex.App.-Houston [14[th] Dist.] 2009).

### B. Defendant Is Not Liable Under Chapter 95

#### a. Applicability of Chapter 95

Chapter 95, enacted in 1996 by the Texas Legislature under the Texas Civil Practice and Remedies Code, applies only to claims (1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; (2) *that arise from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.* Plaintiffs argue that Chapter 95 is inapplicable here because the second requirement is not met: Mr. Smetana's injury did not arise from repairing the Well, but rather from attempting to access the platform to inspect the well site by a gangway. In contrast, Defendant argues that Chapter 95 does apply because Texas courts have consistently held that Chapter 95 applies even when the defective condition or activity leading to the injury was not the direct object of the independent contractor's work.

Several cases support Defendant's contention. *Fisher v. Lee and Change Partnership*, 16 S.W.3d 198, 201 (Tex.App.-Houston [1st Dist.] 2000) ("statute does not require that the defective condition be the object of the contractor's work"); *Sinegal v. Ryan Marine Svcs.*, 2008 WL 7628136 (S.D. Tex. 2008) (court applied Chapter 95 even though plaintiff was not working on the improvement at the time of his injury); *Franks v. Chevron*, 2007 WL 2330296 (S.D. Tex. 2007) (court rejected argument that Chapter 95 did not apply because the injury was not even sustained on the platform itself and found the vessel to be an "extension of the premises"); *Williamson v. Paccar, Inc.*, 2007 WL 2264720 (E.D. Tex. 2007) ("plaintiff's argument that Chapter 95 does not apply is based on the flawed premise that the injury must arise from the subject of the plaintiff's work . . . and the statute applies to his claim which clearly arises out of his work on defendant's property"); *Clark v. Ron Bassinger*, 2006 WL 229901 (Tex.App.-Amarillo 2006) (court rejected argument that Chapter 95 did not apply because plaintiff's injury was unrelated to his plumbing work when he fell through a skylight opening); *see also, Spears v. Crown Central Petroleum Corp.*, 133 Fed.Appx. 129 (5th Cir. 2005) ("the Texas intermediate courts of appeals have unanimously construed chapter 95 broadly").

Plaintiff cites to only one decision in support of its position: *Hernandez v. Brinker International, Inc.*, 285 S.W. 3d 152. There, the Texas appellate court found that Chapter 95 was inapplicable where an air condition repairman was injured when he fell through the roof. Relying on the plain language of the statute, the court reasoned that Chapter 95 did not apply because the plaintiff was not repairing or modifying the roof, but rather the air-conditioning system. *Id.* at 161. However, this decision was a plurality decision and this Court agrees with the dissent, who found that reliance on legislative history was integral since Chapter 95 was ambiguous in its application. *Id.* at 165.

Relying on legislative history, as in the dissent in *Hernandez*, it is clear that Chapter 95 is applicable here. As stated by Representative Junell, "[i]f there is an incident that is not related to the work being done by the contractor and subcontractor, then this chapter does not apply to that. So [for example] if you have an explosion that's not related to anything that the contractor or

4

subcontractor are doing for their purpose of being there, then this chapter would not apply." Debate on S.B. 28, House of Representatives, 74th Leg., R.S. Trans. II-157-58 (May 3, 1995) (statement of Rep. Junell). Furthermore, the case of *Fisher v. Lee and Change Partnership* also relied on legislative intent to determine Chapter 95 applicability. There, the court stated, "the legislative history supports the conclusion that section 95.003 protects appellees. The scaffolding example, used by the legislators in discussing the applicability of the statute, described a tool used for construction, not an improvement that was being repaired or modified itself." 16 S.W.3d at 202. Here, Mr. Smetana's purpose was to fix the Well and was injured on the gangway going to inspect the well—this activity was not distinct from his main purpose of fixing the well, but rather related to his ultimate purpose and improvement. Additionally, similar to *Fisher*, the gangway was not the improvement here, but ingress and egress of the gangway was a tool for the overall construction. Therefore, legislative history supports the application of Chapter 95 here.

Based on predominant case law and legislative history, it is clear that Chapter 95 is applicable here.

### b. Liability Under Chapter 95

Pursuant to Chapter 95, a property owner is not liable for injuries to an independent contractor "who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace," *unless*

(1) The property owner **exercises or retains some control** over the manner in which the work is performed, other than the right to order the work to start or to stop or to inspect progress or receive reports; and
(2) The property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

The Court need not even consider the second requirement here because the first requirement is not met. Plaintiffs argue that Defendant exercised and retained control over the jobsite through McGilvray. Specifically, Plaintiffs emphasize that McGilvray was Defendant's "eyes, ears and hands." However, that is simply not the case. Defendant contracted with S&S, who, in turn, sent McGilvray to do the work. While it is true that McGilvray was involved in the docking of the moor and placement of the gangway, there is too much disconnect between Defendant and McGilvray to hold Defendant liable for his acts. There is no evidence that Defendant had a contract with McGilvray, nor is there any evidence that Defendant told McGilvray how or when to dock the moor. Accordingly, Defendant cannot be found liable under Chapter 95 since Defendant did not exercise or retain control over the work performed.[2]

---

[2] Even if this Court applied *Redinger* in lieu of Chapter 95 as urged by Plaintiffs, the outcome would be remain same, as Defendant retained no control over the gangway or vessel, the main element under *Redinger*.

### C. Because It Has Been Found That Defendant Did Not Exercise Or Retain Control Through McGilvray, Plaintiff's Remaining Theories Of Liability Similarly Fail

*a. Apache Has No Liability As Time Charterer*

Section 5(b) of the LHWCA provides, "[i]n the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party." 33 U.S.C. § 905(b). Under this section, a time charterer cannot be liable unless it is negligent, and "it is a fundamental precept of tort law that there can be no negligence unless there is first a duty." *Kerr-McGee Corp. v. Maju Marine Servs., Inc.*, 830 F.2d 1332, 1340 (5th Cir. 1987). Specifically, a time charterer owes a hybrid duty arising from contract and tort law to persons with whom it has no contractual relationship, including passengers, to avoid negligent actions within the sphere of activity over which it exercises some or all control. *Hogden v. Forest Oil Corp.*, 87 F.3d 1512, 1520 (5th Cir. 1996).

Under traditional terms, a time charterer directs the vessel's commercial activities by designating the cargo to be carried and determining the vessel's routes and destinations. *Moore v. Phillips Petroleum Co.*, 912 F.2d 789, 791-92 (5th Cir. 1990). Courts have held time charterer's liable under Section 5(b) if, for example, the route chosen forced the vessel into a hurricane or similar treacherous conditions. *Kerr-McGee*, 830 F.2d at 1341. However, courts have *never held* that "a time charterer owes a passenger a duty to take precautions to avoid potentially hazardous means of ingress and egress when the vessel owner, the passenger's employer, or other party controlled the means of ingress and egress." *Moore*, at 792. In other words, the integral question involves who controlled the means of ingress or egress. Additionally, a time charterer's duties are wholly distinct from the vessel owner's duties, which *require the vessel owner* remain responsible for the seaworthiness of the vessel, dangerous conditions on board, navigational errors by the pilot and negligence by the crew, and a *reasonably safe means of ingress and egress*. *Id.* at 792.

Similar to its argument above, Plaintiffs here contend that Defendant is liable as time charterer because it controlled the means of ingress and egress through McGilvray, who played an active role in directing the moor, docking the vessel at the platform, and placing the gangway. However, as stated above, this Court does not find that Defendant exercised control, specifically for means of ingress and egress, through McGilvray. Therefore, Defendant is not liable as time charterer.

*b. Apache Has No Liability As Dock Owner*

Generally, a dockowner owes no duty to a vessel crewmember to provide a reasonably safe passage from the vessel. *Florida Fuels, Inc. v. Citgo Petroleum Corp.*, 6 F.3d 330, 334 (5th Cir. 1993). However, case law has not addressed whether a dock owner "might owe a duty to a crew member if the dock owner furnished the gangway or had the gangway under its control." *See Soto v. Trinity Fabrication, LLC*, 2010 WL 4363785 (E.D. La. 2010); *Aguilar v. Bollinger*

6

*Shipyards, Inc.*, 2008 WL 5054576 (E.D. La. 2008) ("whether such a duty would arise if the dockowner actively provides and installs such an access way").

Again, Plaintiffs argue that Defendant is liable as dockowner because it had the gangway under its control, through McGilvray. Just as stated above, however, this Court does not agree—Defendant neither furnished the gangway[3] nor exercised control over the gangway, and thus, cannot be liable as dockowner.

## V. Conclusion

The Court has reviewed the record and considered Defendant's motion for summary judgment, viewing the evidence in the light most favorable to Plaintiffs. The record reveals that there are no remaining genuine issues of material fact, especially given the evidence that Defendant retained no control over the activities that led to Mr. Smetana's injury.

For the reasons set forth above, Defendant's Motion for Summary Judgment [Doc. 112] is hereby **GRANTED**.

THUS DONE AND SIGNED at Lafayette, Louisiana on this 21st day of November, 2011.

**HONORABLE RICHARD T. HAIK, SR.**
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

---

[3] Montco, the vessel's owner, furnished the gangway.

7