RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 4/19/12
          GR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| BILLY W. SMETANA, ET AL. | CIVIL ACTION NO.: 10-349 |
| VERSUS | JUDGE HAIK |
| APACHE CORPORATION, ET AL | MAGISTRATE JUDGE HANNA |

## REASONS FOR JUDGMENT

### I. Facts

On March 1, 2010, Plaintiffs, Billy and Brandy Smetana, brought suit against several entities for injuries arising out of an accident aboard the L/B KAYD, where Billy Smetana, an employee of Wise Well, was performing wireline services on a Well in the Gulf of Mexico off Texas' coast. Plaintiffs allege that on March 9, 2008, while inspecting the work site, Mr. Smetana sustained an injury to his lower left extremity when he fell while egressing the vessel onto a fixed platform via a gangway laid across the deck of the vessel to the platform. Plaintiffs allege that Mr. Smetana's injury was caused by a combination of improper positioning and rigging of the gangway from the vessel to the platform and construction debris positioned on the platform at the gangway landing. The remaining defendants include Montco Offshore, Inc. (Montco), the vessel owner; Stokes & Spiehler Offshore, Inc. (S&S), the company to provide "company man services"; Tim McGilvray (McGilvray), the "company man" hired by S&S; and LIS Energy Services (LIS), the offshore crew company.[1]

The overall objective of the project was to plug and abandon Apache's Wells that were fixed on platforms. In order to actually perform this project, Apache contracted with several companies, including Wise Well to perform the wireline services on the Well, Montco to provide a lift boat with a captain to carry the crew to each Well, S&S to provide a project supervisor, and LIS to provide the offshore crew to actually perform the plug and abandon services.

It is alleged that prior to Mr. Smetana's accident, McGilvray directed the vessel's captain, Captain Charpentier, to travel from Apache's facility to the platform with the Well at issue. As the vessel approached the platform, McGilvray instructed the Captain where he was to moor the vessel relative to the platform, and the Captain agreed. Once the Captain positioned the vessel next to the platform, the Captain, McGilvray and the LIS crew supervisor, Leonard Marcel, determined and agreed upon where and how the gangway would be positioned in order to ingress and egress the vessel. While the Captain dictated the procedures from the wheelhouse, the Montco crane operator and members of the LIS crew put the gangway in place at the predetermined points. Ultimately, the gangway was placed on top of the toeplate of the outer

---

[1] Apache, the platform owner, was dismissed previously by this Court with prejudice.

perimeter handrail of the platform and the platform end of the gangway was above construction debris that was on the platform deck. On the date of injury, Mr. Smetana was egressing the vessel via the gangway to begin his work on the Well. Prior to egressing, Mr. Smetana looked down and became aware of construction debris. Nevertheless, Mr. Smetana continued and, unfortunately, as he was holding onto the handrail and stepping down from the gangway onto the debris, the debris shifted and caused him to fall and injure his left foot.

Based on these facts, Plaintiffs brought suit for negligence based on "general maritime laws of the United States, 33 U.S.C. § 905(b) of the Longshore and Harbor Workers' Compensation Act, Texas law as adopted by virtue of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, *et seq.* and all other applicable federal and state laws." The Complaint further asserted:

> Jurisdiction of this Honorable Court is conferred by Article III, Sect. 2, cl. 1 of the United States Constitution and by virtue of these civil actions giving rise to jurisdiction under the general maritime laws, 28 U.S.C. 1333[2], and the laws of the United States, 28 U.S.C. § 1331[3].

Accordingly, Plaintiffs asserted subject matter jurisdiction of this Court pursuant to admiralty jurisdiction and federal question jurisdiction. Plaintiffs never prayed for a jury trial. Thereafter, each Defendant filed an answer, requesting a jury trial.

After several rounds of summary judgment and the passed deadline in the scheduling order to amend, Plaintiffs filed a motion on January 20, 2012, seeking leave to amend their complaint to bring the claims in admiralty under Rule 9(h) of the Federal Rules of Civil Procedure, thereby proceeding with a bench trial.[4] Plaintiffs' Motion to Amend is opposed by all Defendants. After reviewing the original and supplemental briefs on the matter, and after having heard oral argument on the matter, this Court hereby grants Plaintiffs' Motion For Leave to Amend for the reasons asserted below.

## II. Plaintiffs' Contentions

Plaintiffs seek leave to amend their complaint to make a Rule 9(h) designation. Foremost, Plaintiffs argue that all requirements to bring this case within admiralty jurisdiction as to all Defendants are met. Specifically, there was negligent conduct on navigable waters that caused harm to Mr. Smetana, and a significant relationship between that wrong and maritime activity exists. Plaintiffs point out that Mr. Smetana was injured on a gangplank, which is considered to

---

[2] "The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.
(2) Any prize brought into the United States and all proceedings for the condemnation of property taken as prize."
[3] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."
[4] Specifically, Plaintiffs would like to add the following language to their complaint: "Complainants hereby designate all of their claims in admiralty under Rule 9(h) of the Federal Rules of Civil Procedure."

be part of the vessel and, thus, within admiralty jurisdiction. As a result, the vessel owner, Defendant Montco, is clearly liable under admiralty law. And, as to the other defendants, Plaintiffs claim that a maritime negligence cause of action may be invoked by virtually anyone who suffers injury or loss in an admiralty setting.

Plaintiffs also argue that there is no fatal or otherwise magic language needed for a claimant to designate his claims as falling under the admiralty side of the court. For this reason, Plaintiffs cite cases for the proposition that a statement in a complaint designating admiralty or maritime jurisdiction is sufficient to invoke the admiralty side of the court, notwithstanding that the complainant may have also combined a statement of jurisdiction under either diversity or federal question in the same complaint.

Lastly, Plaintiffs argue they have found no case law holding that the Seventh Amendment affords any protection for trial by jury in the face of an admiralty jurisdictional statement. For these reasons, Plaintiffs pray that this Court grant its motion for leave to amend their complaint.

### III. Defendants' Opposition[5]

Defendants argue that Plaintiffs' motion to amend is extremely untimely. Specifically, pursuant to the last scheduling order issued in this case on August 1, 2011, the last day to amend was October 17, 2011. Defendants claim that amending the complaint so close to the July 9, 2012 trial date is prejudicial.

Defendants also argue they have a Seventh Amendment right to a jury trial, especially given that all Defendants asserted a request for a jury trial in their responsive pleadings. Defendants argue that such a request cannot be withdrawn without the parties' consent, and Defendants do not consent. As a result, Defendants argue that they have a constitutional right to a jury trial that was vested when they requested a jury trial, thereby precluding a bench trial in this matter.

Lastly, Defendants contend that the proposed amendment is futile. While the majority of Defendants admit that Plaintiffs' claims against Montco, the vessel owner, lie in admiralty,[6] the same is not true with respect to the claims against the other Defendants. In fact, Defendants argue that, until this motion, Plaintiffs have always maintained that Texas law applies by virtue of the Outer Continental Shelf Lands Act. For these reasons, Defendants urge this Court to deny Plaintiffs' motion for leave to amend.

---

[5] Although each Defendant filed its own opposition and supplemental brief, their arguments will be addressed as a whole.

[6] Montco did not admit to such in its briefings.

**IV. Analysis**

### A. Defendants Are Not Prejudiced By Plaintiffs' Untimely Amendment

Amendment of pleadings is governed by Federal Rule of Civil Procedure 15. Rule 15 allows amendments after the filing of a responsive pleading only by "leave of court or by written consent of the adverse party." Such leave will be granted when "justice so requires." Reasons which have been enumerated for not permitting amendments include undue delay, bad faith, repeated failure to cure deficiencies by amendments, undue prejudice to the opposing party and futility of amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). *Moore's Federal Rules Pamphlet* expands on one of the principal reasons for denying a motion for leave to amend: untimeliness, or more specifically,

> Delay i.e., that the proposed amendment was sought too late in the proceedings.
>
> A particular example of when a proposed amended pleading may be deemed unduly delayed is when leave of court is sought after the deadlines set out in a scheduling order under Rule 16. In that case, the good cause standard of the latter rule must be met before the amendment will be permitted.

1 James Wm. Moore et al., *Moore's Federal Rules Pamphlet* § 15.3[2][b] (2012).

However, the Fifth Circuit has held that "Rule 9(h) is not a harsh rule," *T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 588 (5th Cir. 1983), and "[t]he pleader's identification of his claim as an admiralty or maritime claim or failure to do so is not an irrevocable election," 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1314 (3d ed. 2004). Provided that there is no prejudice to the court or to the defendants, a plaintiff should be permitted to amend her complaint to change her Rule 9(h) election. *Luera v. M/V Alberta*, 635 F.3d 181, 187 (5th Cir. 2011), *citing Conti v. Sanko S.S. Co., Ltd.*, 912 F.2d 816, 818 (5th Cir. 1990).

Defendants argue that if this motion for leave to amend is granted, they will be prejudiced so close to the trial date. Although the undersigned acknowledges and admonishes Plaintiffs' delay in amending,[7] this Court is not persuaded that Defendants would be prejudiced by this amendment. There may have been a compelling argument against amendment if this matter was transferring from a bench trial to the jury docket; however, the opposite is true here, and this Court maintains that conversion from a jury trial to a bench trial is not prejudicial. *See Olaru v. Tidewater, Inc.*, 2011 WL 4073002, *2 (E.D. La. 2011) ("[i]t is difficult to conceive how converting this case from a jury trial to a bench trial will prejudice the Defendants at all. Presumably, the same witnesses and exhibits will be used at trial."). In fact, such a conversion actually relieves counsel from additional preparation, such as opening and closing statements. *Id.*

---

[7] Plaintiffs' filed their motion for leave to amend three months after the deadline to amend in the scheduling order.

4

The Plaintiffs' clearly filed their motion for leave to amend untimely without any explanation as to the delay. Notwithstanding, this Court finds this delay, without any other extrinsic circumstance, insufficient to justify denial of the motion. Furthermore, the Court finds that Defendants will not be prejudiced by the granting of this motion. For these reasons, the Court will consider and analyze Plaintiffs' Motion.

### B. Admiralty Jurisdiction Exists On Its Own Force

In order to determine whether Plaintiffs' motion for leave to amend should be granted, the Court must first determine whether admiralty jurisdiction exists in this case. Pursuant to 28 U.S.C. § 1333, district courts "shall have original jurisdiction" of any "civil case of admiralty or maritime jurisdiction." The Supreme Court articulated the test for establishing admiralty jurisdiction over tort claims in *Grubart v. Great Lakes Dredge & Dock Company*:

> [A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. §1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce." Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a substantial relationship to traditional maritime activity."

513 U.S. 527, 534 (1995) (internal citations omitted). However, the Supreme Court has unequivocally stated that "the substantial relationship test is satisfied when at least *one* alleged tortfeasor was engaging in activity substantially related to traditional maritime activity and such activity is claimed to have been a proximate cause of the incident."[8] *Id.* at 541 (emphasis added).

Applying the *Grubart* test to the facts alleged here, it is clear that the first element is met: Mr. Smetana's injury occurred on the vessel's gangway while on navigable water. The first prong of the connection test is similarly met. Specifically, although the parties did not brief this issue, it can be said that Mr. Smetana's injury undoubtedly caused delay in the overall project at hand and affected the vessel's maritime activity to, at least, some degree.

---

[8] The Court notes Justice O'Connor's concurrence in the *Grubart* decision, where she states, "I do not, however, understand the Court's opinion to suggest that, having found admiralty jurisdiction over a particular claim against a particular party, a court *must* then exercise admiralty jurisdiction over *all* the claims and parties involved in the case." *Id.* at 548. However, the Fifth Circuit has expressly elected to follow the majority opinion in *Grubart*, and the undersigned follows same. *Scarborough v. Clemco Industries*, 391 F.3d 660, 665-66 (5th Cir. 2004) ("Justice O'Connor's concurrence, which addresses only this issue, is just that- a concurrence and not a part of the majority opinion for a reason. . . . [and] does not provide this court with a sufficient justification for ignoring the plain language of the *Grubart* majority.")

5

Furthermore, with regard to the second prong of the connection test, the vessel at issue was transporting Mr. Smetana to different platforms to perform wireline services on each Well, ostensibly a traditional maritime activity. However, even if transporting Mr. Smetana to perform wireline services on Wells is not within the realm of a "traditional maritime activity," pursuant to *Grubart*, this element is nonetheless met due to Defendant Montco's position as vessel owner and tortfeasor. In other words, because Defendant Monto is a potential tortfeasor in this matter and was engaged in traditional maritime activity by navigating the vessel in navigable waters, the substantial relationship test is satisfied as to *all* defendants. All the elements for admiralty jurisdiction have been met and, therefore, this Court finds that admiralty jurisdiction exists on its own force as to all claims against all Defendants.

### C. Although Multiple Bases Of Federal Jurisdiction Exist, Plaintiffs Made a Rule 9(h) Election, Designating The Entire Proceeding Under Admiralty Jurisdiction

The Supreme Court has held that admiralty claims do not arise under the laws of the United States, and thus, are not federal question cases. *See Romero v. International Terminal Operating Co.*, 358 U.S. 354, 368 (1959), *overruled on other grounds*. However, a litigant is free to invoke federal question or diversity jurisdiction in addition to admiralty jurisdiction. That is the case here, where Plaintiffs alleged jurisdiction pursuant to admiralty and federal question. In such circumstances, where there are multiple bases for federal jurisdiction, a litigant may specifically invoke admiralty jurisdiction through a Rule 9(h) designation. Specifically, Rule 9(h) of the Federal Rules of Civil Procedure provides in pertinent part:

> A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim.

An election under Rule 9(h) is revocable. In fact, a pleader may subsequently add or withdraw the Rule 9(h) election. *See Eubanks v. Noble Offshore Corp.*, 224 Fed. Appx. 319, 320-21 (5th Cir. 2007); *Emerson G.M. Diesel, Inc. v. Alaskan Enterprise*, 732 F.2d 1468, 1471 (9th Cir. 1984). If the pleader desires to *add* a Rule 9(h) election, a formal amendment of the complaint is preferable. *See Romero v. Bethlehem Steel Corp.*, 515 F.2d 1249, 1252-53, n. 1. (5th Cir. 1975). Such an amendment motion will be granted by discretion of the court. *See Continental v. Sanko Steamship Co.*, 912 F.2d 816, 818 (5th Cir. 1990).

### 1. *Plaintiffs Sufficiently Designated To Proceed Under Rule 9(h) In Their Complaint*

In the instant action, although the Plaintiffs alleged admiralty jurisdiction among others, Defendants argue that Plaintiffs did not adequately elect to proceed under Rule 9(h). However, case law maintains that no magic words are required to make a Rule 9(h) designation. For example, in *TNT Marine Service, Inc.*, the Fifth Circuit stated that a plaintiff's case "will be treated as one in admiralty 'by a simple statement in his pleading to the effect that the claim is an

6

admiralty or maritime claim.'" 702 F.2d at 587. More recently, the Fifth Circuit reiterated this holding in *Luera v. M/V Alberta*, stating that "a plaintiff who asserts admiralty jurisdiction as a basis for the courts subject matter jurisdiction over a claim has *automatically* elected under Rule 9(h) to proceed under the admiralty rules, even if she states that her claim is also cognizable under diversity or some other basis of federal subject matter jurisdiction." 635 F.3d at 189 (emphasis added); *see also Apache Corp. v. Global Santa Fe Drilling Co.*, 435 Fed. Appx. 322, 325 (5th Cir. 2011) (echoing that "if a party asserts both admiralty and diversity jurisdiction, the court will treat the claim as though a Rule 9(h) declaration has been made").

Here, Plaintiffs clearly asserted admiralty jurisdiction in their complaint when they declared the Court's subject matter jurisdiction pursuant to "general maritime laws, 28 U.S.C. 1333." According to case law, this simple statement suffices. Furthermore, it is axiomatic that Plaintiffs never demanded a trial by jury in their complaint or any subsequent pleading. Because no magic words are required to make a Rule 9(h) designation, the Court finds Plaintiffs' language to be sufficient under the circumstances.

### 2. There Is No Right To A Jury Trial Where Plaintiff Has Made A Rule 9(h) Designation, Even In The Presence Of Additional Bases Of Jurisdiction

Having found Plaintiffs' asserted a Rule 9(h) designation in their original complaint, the Court must now analyze Defendants argument regarding a Seventh Amendment right to a jury trial and determine how the entire action will proceed. When litigants act upon their right to allege multiple bases for federal jurisdiction, one being admiralty, issues involving jury trials often arise. This is because jury trials have historically been excluded from admiralty suits. *Becker v. Tidewater, Inc.*, 405 F.3d 257, 259 (5th Cir. 2005). Courts have resolved this issue in a variety of approaches. For example, some courts have dismissed any non-maritime claims by refusing to accept pendent jurisdiction, *McCann v. Falgout Boat Company*, 44 F.R.D. 34, 36-37 (S.D. Tex. 1968), while other courts have ordered a bifurcated trial on the case, *e.g., Alaska Barite Company v. Freighters, Inc.*, 54 F.R.D. 192 (N.D. Cal. 1972). 2 Schoenbaum, Admiralty and Maritime Law, §21-10 (5th ed. 2011). However, bifurcation is undesirable and proves inefficient in cases involving common factual and legal determinations.[9]

A third approach, found compelling by this Court, is to allow the plaintiff's original Rule 9(h) election to control the entire case, thus proceeding with a bench trial.[10] *See William P. Brooks Constr. Co. v. Guthrie*, 614 F.2d 509 (5th Cir. 1980); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Bauer Dredging Co.*, 74 F.R.D. 461 (S.D. Tex. 1977). Such an approach is supported by case law. Specifically, case law is clear that a plaintiff's Rule 9(h) designation, and thus election

---

[9] *See Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 18-19, 21 (1963) ("Only one trier of fact should be used for the trial of what is essentially one lawsuit to settle one claim split conceptually into separate parts because of historical developments;" "submitting part of [the lawsuit] to a jury and part to a judge, unduly complicates and confuses a trial, creates difficulties in applying doctrines of res judicata and collateral estoppel, and can easily result in too much or too little recovery."); *see also Debellefeuille v. Vastar Offshore, Inc.*, 139 F. Supp. 2d 821, 826 (S.D. Tex. 2001) (holding one trier of fact necessary to apportion fault in intertwined matter involving a single accident).
[10] The Court notes of a fourth approach, whereby the entire case is tried to a jury; however, due to Plaintiffs' Rule 9(h) election, the Court declines to utilize that approach in the instant matter.

to proceed without a jury trial, trumps any other bases of subject matter jurisdiction alleged in the complaint. *Hamm v. Island Operating Company, Inc.*, 450 Fed.Appx. 365, 369 (5th Cir. 2011) ("even if the district court properly concluded that it has both maritime jurisdiction and jurisdiction under OCSLA . . . [the defendant] still has **no right to a jury trial** because [plaintiff] elected a non-jury trial under Rule 9(h) of the Federal Rules of Civil Procedure.") (emphasis added); *TNT Marine Service, Inc.*, 702 F.2d at 587 ("**no right to a jury trial** where the complaint contains a statement identifying the claim as an admiralty or maritime claim, even though diversity jurisdiction exists as well") (emphasis added), citing *Romero v. Bethlehem Steel Corp.*, 515 F.2d 1249 (5th Cir. 1975); *Breeden v. Transocean Offshore Ventures, Inc.*, 2001 WL 64772, *1 (E.D. La. 2001) (court held **no right to a jury trial** where plaintiff brought case under admiralty jurisdiction, even though plaintiff demanded jury trial and also alleged diversity jurisdiction); *see also Luera*, 635 F.3d at 189 ("a plaintiff who asserts admiralty jurisdiction as a basis for the courts subject matter jurisdiction over a claim has automatically elected under Rule 9(h) to proceed under the admiralty rules, even if she states that her claim is also cognizable under diversity **or some other basis of federal subject matter jurisdiction**." (emphasis added).)

Plaintiffs, here, brought suit based on admiralty *and* federal question subject matter jurisdiction. However, as the above case law illustrates, Plaintiffs' Rule 9(h) designation controls, notwithstanding the presence of federal question jurisdiction. Therefore, Defendants are not entitled to a jury trial, as their Seventh Amendment right to a jury trial never even arose in this matter.[11] Accordingly, admiralty jurisdiction, pursuant to Rule 9(h), controls this entire action, resulting in a bench trial.

### D. Certification For Appeal

This Court is cognizant of the consequences of allowing Plaintiffs to amend their complaint to proceed under Rule 9(h), especially given the upcoming trial date. Furthermore, the Court notes the disparity of case law concerning the issue of jury trials in hybrid cases such as this one. For these reasons and judicial efficacy purposes, this Court finds it essential to certify its decision for immediate interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), if Defendants so desire. However, if this decision is not appealed, this Court intends on proceeding with a bench trial in this matter on July 9, 2012.

---

[11] Defendants cite *Johnson v. Penrod Drilling Co.*, 469 F.2d 897 (5th Cir. 1972) in support of their argument that they maintain a Seventh Amendment right to a jury trial. There, the Fifth Circuit held that the plaintiff could not amend his complaint to assert admiralty jurisdiction without depriving defendant of its Seventh Amendment right to a jury trial. However, this Court finds that case distinguishable. Specifically, the facts in *Johnson* differ from the instant one because the plaintiff, there, demanded a jury trial prior to his Rule 9(h) amendment. The Fifth Circuit found this fact to be "of critical importance" to its decision. *Id.* at 902. Furthermore, that case focused particularly on "the withdrawal of the plaintiffs' demands for jury trials." *Id.* Conversely, Plaintiffs, here, never requested a jury trial and are not seeking to withdraw the same. In fact, this Court has concluded that Plaintiffs sufficiently elected to proceed under admiralty rules pursuant to Rule 9(h) in their *original* complaint. Accordingly, this Court refuses to follow the holding in *Johnson*.

8

## VI. Conclusion

The Court has reviewed Plaintiffs' Motion for Leave to Amend and Defendants' Oppositions to said Motion, including supplemental briefs on the issue, and considered oral argument on the matter. The Court finds that admiralty jurisdiction is applicable on its own force as to all claims asserted by Plaintiffs. Furthermore, Plaintiffs sufficiently designated their claims in admiralty under Rule 9(h) of the Federal Rules of Civil Procedure in their original complaint. As a result, while Plaintiffs alleged multiple bases of subject matter jurisdiction, this case will proceed pursuant to Plaintiffs' Rule 9(h) election and will be tried without a jury.

For the reasons set forth above, and solely for clarification purposes, Plaintiffs' Motion for Leave to Amend is hereby **GRANTED**.

**THUS DONE AND SIGNED** at Lafayette, Louisiana on this ___18th___ day of April, 2012.

HONORABLE RICHARD T. HAIK, SR.
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA